## Apollos Howard *vs.* Nathan Hayward.

Tenants in common of land conveyed to them, to have and to hold to them, their heirs
    and assigns, and to each and every person who may become proprietor of a pew in a
    meeting-house to be built on the land, to the use of every such proprietor, and his
    successors, are authorized by *St.* 1783, *c.* 39, and Rev. Sts. *c.* 43, to organize them-
    selves as a body corporate.
Land was conveyed by deed to the members of an incorporated religious society who
    had entered into an agreement to build a meeting-house, to have and to hold to them
    and their heirs and assigns, to their use, for the purpose of building such house, and
    the use of each and every owner of a pew or pews in the house to be built and rebuilt
    on said land forever :  The grantees of the land organized themselves as proprietors,
    according to the provisions of *St.* 1783, *c.* 39, and Rev. Sts. *c.* 43, and the associates
    who had agreed to build a meeting-house caused such house to be built on the land,
    upon an agreement by which the house and the expenses thereof were divided into
    thirty two equal shares, to be owned by the proprietors according to the amount there-
    for severally subscribed by them :  The proprietors, in their individual capacities, con-
    stituted three attorneys, with authority to lease or sell the pews in the house, or the
    shares of the proprietors, and to execute deeds thereof, and directed said attorneys
    to pay over to each proprietor, out of the money received for rents or sales of pews,
    the amount which he had paid for the building of the house, and to pay the surplus to
    the treasurer of the religious society for whose use the house was built :  The attor-
    neys sold and conveyed only three fifths of the pews :  The incorporated religious
    society afterwards received the rents of the unsold two fifths of the pews, and direct-
    ed its prudential committee to take charge of said pews :  The proprietors of the land,
    in their corporate capacity, elected a committee of three to manage their affairs, (as
    authorized by *St.* 1783, *c.* 39, and Rev. Sts. *c.* 43, § 4,) and said committee took charge
    of the meeting-house.  *Held,* in an action brought by one of the prudential committee

of the religious society, against one of the proprietors' committee for ejecting the plaintiff from the meeting-house, that the legal estate in the house was in the incorporated proprietors, and not in the religious society, and that the action could not be maintained.

A party took exceptions to the admission in evidence of the records of proprietors of lands held in common, solely on the ground that the proprietors were not such as were authorized by *St.* 1783, *c.* 39, and Rev. Sts. *c.* 43, to form themselves into a corporation ; and liberty was given by the judge to refer to the records in the argument on the exceptions. *Held,* that the party must be confined to the specific objection taken by him at the trial, and that he could not object that the records did not show that the proprietors, in organizing themselves as a corporation, proceeded in all particulars conformably to the requisitions of the statutes.

TRESPASS for an assault and battery, in forcibly ejecting the plaintiff from a meeting-house in North Bridgewater. The defendant justified on the ground that he had the control and management of the house ; that the plaintiff was a tres passer in the house ; and that the defendant used no more force than was necessary to remove the plaintiff. The tria' was in the court of common pleas, before *Ward,* J. whose report thereof was as follows :

The defendant introduced evidence to show that, on the 15th of November 1825, Joseph S. Packard, by deed of that date, conveyed the land on which said house stands to himself, the defendant, and twenty four others, for the consideration of $175·47, describing the grantees as persons " who have associated together, and have entered into a contract, as proprietors, for the purpose of building and erecting on said lot a meeting-house for the public worship of God. To have and to hold said lot to the said proprietors, and to their heirs and assigns, and to each and every person who may hereafter become the lawful owner and proprietor of a pew in said house to be built and erected thereon, and which may and shall afterwards be rebuilt thereon by said proprietors and their successors, to the use and behoof of said proprietors, for the said purpose, and of each and every lawful owner and proprietor of a pew or pews in the meeting-house to be built and rebuilt on said lot, forever." He also introduced evidence that said house was subsequently built, and that said persons organized themselves as a body corporate, under the statutes

of the Commonwealth, by the name of the Proprietors of the Second Congregational Meeting-house in North Bridgewater. And he offered in evidence the records of said proprietors, to prove their organization. The plaintiff objected to this evidence, on the ground that the grantees under Packard's deed were not such proprietors as were empowered by *St.* 1783, *c.* 39, or by any subsequent statute, to organize themselves as a body corporate. But the court ruled otherwise.

The defendant then offered evidence that the notice for the meeting of the proprietors, on the 22d of July 1837, was published in a newspaper printed in Plymouth, according to law ; and the said records were then admitted for the purpose of enabling the defendant to show an organization of said proprietors prior to the 14th of July 1844. The plaintiff objected to these records, as incompetent for want of sufficient service and return of the warrant and notices of the meeting, and because, upon the face of all the records, which are to be referred to as in the case, there had been no organization of said grantees. But the court overruled the objection.

The defendant then showed a vote of said proprietors, by which, on the 16th of March 1839, he was chosen one of a proprietors' committee of three, under said organization. He then offered evidence tending to show that a majority of said committee authorized him to take charge of said house, and that by virtue of said authority, or in his capacity as one of said committee, he had charge of the house on the day of the assault. To this evidence the plaintiff objected, but the court admitted it.

The defendant gave in evidence a power of attorney, dated August 19th 1826, executed by Micha Packard and twenty seven others, who recited therein that they were seized in fee simple of certain shares and parts of shares, each in his own right, in the new meeting-house in North Bridgewater, which the defendant built for them and himself, and appointing P. Crocker, D. Cobb and J. Battles their attorneys, with authority to lease or sell the pews in said house, or the constituents' shares or parts of shares, to such persons, and for such term

of time as they should think proper, &c. and to seal, execute and deliver such deeds of conveyances, with such clauses, covenants and agreements as they should think fit ; and also authorizing and directing their said attorneys, out of the moneys which they should receive from time to time, for the rents and sales of the said pews, to pay over to each proprietor or owner of a share, shares, or part of a share, such sum or sums of money as should be the amount which they had paid to the defendant for building the said share, shares, or part of a share in said house, &c.    The last paragraph of said instrument was as follows :  " The rest and residue of the moneys that may be received, from time to time, after the payments are made to the proprietors or owners of the house, as aforesaid, we do hereby authorize and direct our said attorneys to pay the same over to the treasurer of the Second Congregational Society in North Bridgewater, to be appropriated to procure preaching for said society, by the committee of said society, or such special committee as may be appointed for that purpose under the direction of said society."

The defendant also gave in evidence an order of the supreme judicial court, passed at May term 1843, by which on the dismissal of a bill in equity that had been brought against the defendant by the Second Congregational Society hereinafter mentioned, the key of said meeting-house which had been ordered from the defendant into the hands of a receiver, on the filing of the bill, had been redelivered to him ; said bill having been dismissed for want of prosecution ; and that since that time he had kept the key and had the sole control, and that the society, after that time, had not been permitted to use the house.

The plaintiff then showed that the Second Congregational Society in North Bridgewater was incorporated by an act of the legislature June 18th 1825 ; that all the grantees in said Packard's deed, and some others, were named as corporators in said act ; that said society was organized under said act, August 15th 1825 ; that the plaintiff was chosen the first clerk, and had remained in said office ever since ; and that

said society had annually chosen their officers. He also gave in evidence two papers as building contracts, signed by the defendant who was a house carpenter, which are in the case,* and are signed by many others; and also referred to said power of attorney, as all tending to show that said house was built for the use of said society.

The plaintiff showed that, in April 1844, he was duly elect-

---

* The first building contract, dated August 23d 1825, signed by all the grantees named in Jos. S. Packard's subsequent deed of November 15th, and by two other persons, was as follows : "We the undersigned subscribers, being desirous to erect a meeting-house for the accommodation of The Second Congregational Society in North Bridgewater, do severally covenant and engage to purchase of the building committee of said meeting-house and to pay for the number of pews set against our several names, under the conditions hereinafter mentioned. The said house shall be forty five feet wide and sixty feet long, and shall contain fifty two pews, and shall be built with all convenient despatch, nearly on the plan of the Unitarian meeting-house lately erected in Northampton, Mass. and shall be situated on a lot near the centre school house in said North Bridgewater. It shall be built of good merchantable materials, and in a workmanlike manner, and shall be well painted inside and out. After the house is finished, the pews are to be averaged at one hundred dollars each, by an appraising committee of impartial men, who shall be chosen by the aforesaid building committee from neighboring towns ; that is to say, the fifty two pews shall be so appraised as to amount to five thousand and two hundred dollars, and all which is left after paying for the house shall constitute a fund for the benefit of the said society. After appraisal the pews shall be sold by auction, (of which due notice shall be given by the building committee,) at the prices at which they were appraised, and all who hereby agree to purchase, together with all others who wish to purchase, shall bid for choice, and he who bids highest has the first choice, &c All the money raised above the appraisal, by bidding for choice, shall go into the funds for the benefit of the society. If by fire, or any other unforeseen accident, the house should be destroyed before its completion, or before the sale of the pews, we severally agree to bear our proportional part of the loss."

The second building contract was dated November 7th 1825, and was signed by all but one of the aforesaid grantees, and by three others, in which, after reciting that they had theretofore agreed to build a meeting-house for public worship, they stated that in order to carry said agreement into effect, they had determined to divide the building and the expenses thereof into thirty two equal shares, to be owned by the proprietors in certain proportions ; and Hayward (the defendant) agreed with them to build the meeting-house, and they agreed to pay him therefor, at the rate of one hundred dollars for one share : It was further agreed that said house should be finished on or before the 1st of July 1826, and that it should in no respect vary from the terms of the aforesaid first contract, except that it should be only fifty feet in length.

ed one of the prudential committee of said society, one of whom is a grantee under said deed, and that said society had ordained a pastor, and had used said house as their own for twelve or fifteen years after it was built, and claimed to have control of said house and land, and of the twenty one pews in said house which remained unsold in 1826, after a sufficient number of said pews had been sold, by the attorneys under said power, to defray the expense of building said house ; that the net proceeds of said twenty one pews, obtained by letting them, were paid to said society, and that the incorporated proprietors had assumed the possession of the house before the day of the assault ; that on the 9th of July 1844, said society, of which he was clerk, directed the prudential committee aforesaid, of whom the plaintiff was one, to enter into said meeting-house and affix labels to said twenty one pews, as the society's property ; and that he and one more of said committee entered by virtue of this vote, and was in the act of affixing said labels with paste, when the defendant entered and ejected him.

The plaintiff also proved, that on the 17th of September 1832, May 18th 1835, and September 25th 1841, said society voted to label said twenty one pews as their property, which had accordingly been done ; that at the supreme judicial court in this county, in 1837, the said society, in an action of trespass *quare clausum*, recovered judgment against two defendants, who entered on a part of said land conveyed by said Packard, under a license from the defendant ; that said society had complained of similar acts of the defendant ever since ; that said society had charge of the dedication of said meeting-house built after the execution of said two contracts signed by the defendant and others, which are in the case ; and that said society, during a considerable part of 1842, hired a minister and worshipped in said house, as tenants of the receiver ; but he offered no evidence to show that, after the said decree of the supreme judicial court, said society had any control of the house.

The plaintiff 's counsel hereupon contended that the plain-

35 *

tiff had a right to enter said meeting-house, and paste said labels upon said twenty one pews ; that said incorporated proprietors had not, by their committee, the control of said house and twenty one pews.   But the court ruled, and instructed the jury, that the property in the house and land, upon this documentary evidence, was in the grantees of Packard's deed, until the proprietors were organized as a corporation ; that after such organization, said incorporated proprietors had the control of said land and house ; that the Second Congregational Society had never any legal title thereto ; that while said society used the house, they were no more than tenants at will or licensees of the incorporated proprietors, and had only a temporary control ; that the said proprietors, having terminated that tenancy or license by assuming the control of the house for some years, no person had a right to enter it by virtue of any vote of the society ; that if the plaintiff entered solely by virtue of said society's vote, and against the will of the proprietors, he was a trespasser; that if the defendant was then authorized by the proprietors to manage and control the house, he might prevent the plaintiff from pasting said labels, and, after proper notice to him to depart, he might expel the plaintiff, provided he used no more force than was necessary.

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions, which were allowed, with liberty to either party to refer, on the argument upon the exceptions, to any of the documents given in evidence at the trial.

*Bolles & E. Ames,* for the plaintiff.   Packard's deed of the meeting-house lot was made to the parties who executed the first building contract.   That contract is referred to in the deed, and is to be considered as embodied therein ; and its terms must be considered as having been accepted by the grantees of the land, and to be binding on them.   *Goodwin* v. *Gilbert,* 9 Mass. 510.   *Nugent* v. *Riley,* 1 Met. 117. *Newell* v. *Hill,* 2 Met. 180.   The grantees held in trust for the pew holders ; the use shifting to those persons who

thereafterwards became pew holders. *Congregational Soci-*,
*ety* v. *Waring*, 24 Pick. 304. There was a good considera-
tion for the declaration of trusts, viz. the subscription; and
the deed is to be construed according to the usages of simi-
lar societies. *Wood* v. *Cushing*, 6 Met. 456. The pews
which were sold belong to the buyers, and the twenty one
unsold pews belong to the Congregational Society. After the
grantees of the land executed the power of attorney, on the
19th of August 1826, they were *functi officio*, and the soci-
ety has ever since had the lawful right to the control of the
house, land and pews. Even if the grantees have the legal
title to the land, &c. under their organization as a corporate
body, they have no control of the twenty one unsold pews.
But the grantees are not a corporate body. When they
attempted to organize as such they held no common prop-
erty. The fifty two pews had become several property, viz.
thirty one of separate owners, and twenty one of the Congre-
gational Society. The society owned all that parishes usu-
ally own, and the grantees had nothing besides their pews.
The society, according to the facts, and the usages of like
bodies, had the sole control and possession of the twenty
one pews; and the plaintiff, therefore, while acting under
the society, was lawfully employed when he was assaulted.

The grantees never had the legal estate, but were only
trustees. Neither the *St.* of 1783, *c.* 39, nor the Rev. Sts.
*c.* 43, ever contemplated property owned in trust, or property
devoted to ecclesiastical uses. The early laws of Massachu-
setts scrupulously excluded all lay interference in ecclesiasti-
cal concerns. Anc. Chart. 100, 105, 419, 605. The gran-
tees were not authorized by *St.* 1783, nor by Rev. Sts. *c.* 43,
to organize as a corporation. Those statutes give such au
thority only to proprietors of "real estate lying in common,
or held in common." But it is essential to an estate in com-
mon to be subject to partition; and it is always in the power
of one tenant in common to enforce a partition. See also
Anc. Chart. 258, 458, 568. *Mitchell* v. *Starbuck*, 10 Mass.
12. *Potter* v. *Wheeler*, 13 Mass. 507. It will not be pre-

tended that estate, limited and applied to the use of a meeting-house thereon, is subject to partition. The Rev. Sts. c. 43, §§ 7, 17, provide for improving and dividing the common property mentioned in § 1. But trustees cannot make a division in severalty, and divide their duties.

The book of the proprietors, (grantees,) which is called their records, was not admissible in evidence, because the entries therein are not records. Those entries show that the proprietors were never legally organized as a corporation. This book contains an account of three attempts to organize, viz. in April 1828, June 1836, and July 1837. The first attempt failed, even in the proprietors' own view, for want of the notice prescribed by law. The second attempt will be found by the court to have failed, because the notice of the meeting does not appear to have been by advertising as well as by posting ; and because it does not appear that " a majority in interest of all the proprietors, whether present or absent," agreed and voted to organize themselves as a corporation, as required by Rev. Sts. c. 43, §§ 3, 4. No agreement or vote to organize is shown by the record, so called. This last defect is applicable to the third attempt, at the meeting in July 1837 ; and the application for that meeting does not appear to have been made by proprietors, all of whom were owners at the time.

If there was no legal organization of the proprietors, then the evidence that a committee, chosen by the vote of the proprietors, authorized the defendant to take charge of the pews, cannot avail him, there being nobody competent to elect or give authority to a committee.

In the case of the *Second Congregational Society* v. *Waring*, 24 Pick. 304, the question, whether the proprietors were duly organized as a corporate body, was not discussed. It was there assumed, or admitted.

*Coffin*, for the defendant. Packard's grantees took the legal estate granted. They owned and still own the land, for the use of those who might become pew holders. *Second Congregational Society* v. *Waring*, 24 Pick. 304. The Con-

gregational Society never acquired any title to the twenty one unsold pews. If they would have had any title under the first building contract, they have none under the second, by which the first was abandoned, and the defendant became a contractor to build a house of different dimensions, and divided into different shares.

The *St.* of 1783, *c.* 39, and Rev. Sts. *c.* 43, authorized the proprietors of the land purchased for the site of a meeting-house to organize as a body corporate. They were owners of " real estate held in common ; " and it is not necessary that such estate should be susceptible of partition. Wharves are mentioned in both statutes, as property that may be held in common ; but they are not divisible. Since the abolition of the old third article of the Bill of Rights, public worship is entirely voluntary, and meeting-houses are owned by individuals as tenants in common, and are within the purview of the Rev. Sts. *c.* 43.

The question as to the legality of the organization of the proprietors was never before raised. At the trial, no specific objection was made to their organization, besides that of their not being within the meaning of *St.* 1783, *c.* 39, and Rev. Sts. *c.* 43. The facts, which are said not to appear by the records, might have been supplied by proof at the trial, if the defect had been then suggested, and had been specified in the bill of exceptions. As this was not done, the additional objections now made are not open to the plaintiff. 1 U. S. Digest, Bill of Exceptions, 212. *Wright* v. *Sharp*, 1 Salk. 288, and Holt, 301.

Even if there were no legal organization of the proprietors, the defendant had such a right of possession as warranted him in protecting the pews.

The decision was made at October term 1846.

WILDE, J. This is an action of trespass for an assault and battery on the plaintiff, in forcibly ejecting him from a meeting-house in North Bridgewater, which the defendant justifies on the ground that the plaintiff was a trespasser in the house, and that the defendant had a right to eject him therefrom,

using no more force than was necessary for that purpose. In support of this defence, the defendant proved that he had been chosen, by the proprietors of the said house, one of a committee of three to manage their affairs, and that he was authorized to take charge of the house, and that he had charge thereof at the time of the assault.

To this evidence the plaintiff's counsel objected, on the ground that the proprietors of the meeting-house had never been legally organized, and consequently that the records of their proceedings in the choice of the said committee were inadmissible. To this objection two answers were given by the defendant's counsel : *First,* that the defendant was in actual possession of the meeting-house, and had been for many years, he being also one of the said proprietors: That in 1841 the Second Congregational Society in North Bridgewater, under whom the plaintiff claimed a right to enter, brought a bill in equity against the defendant, and procured an injunction thereon, and the appointment of a receiver to take care of said meeting-house and to lease the same, and to whom the key of the said house was delivered ; that said action was continued from term to term of this court until 1843, when it was ordered by the court that the said injunction, and the order appointing a receiver, be revoked, and that the key of the meeting-house should be delivered to the defendant by the receiver, which was done accordingly. In the *second* place, the defendant's counsel contended that the said proprietors of the meeting-house had been duly organized in conformity to the Rev. Sts. *c.* 43.

As to the *first,* we are inclined to the opinion that the defendant had the actual and lawful possession of the meeting-house, and had the right to maintain his possession against the Second Congregational Society, if their agent, the plaintiff, had no right to enter, although the proprietors had not been legally organized as a corporation. One tenant in common has a right, without any authority from his cotenants, to defend his possession against a party having no right. So a party having actual possession of property, without any other

title, may defend his possession against a stranger having no title.

The decision of this point, however, is not necessary, as we are of opinion that the proprietors were duly organized in the year 1837, conformably to the provisions of the Rev. Sts. c. 43.

It has been objected that this property is not within the statute, because " it is essential to an estate in common to be subject to partition," as was said in *Mitchell* v. *Starbuck*, 10 Mass. 12. This general proposition is true, undoubtedly. By the Rev. Sts. c. 103, $ 1, it is expressly provided, that all persons holding lands as joint tenants, coparceners, or tenants in common, may be compelled to divide the same, either by writ of partition at common law, or in the manner provided in that chapter. But, although this is the general principle, yet real estate may be so situated, and appropriated to such uses, as not to be capable of being divided among the owners of the common property without great loss and injury to all the proprietors. Such is the situation of wharves; and yet they are expressly included in *St.* 1783, c. 39, and in Rev. Sts. c. 43. Indeed, it is obvious that in all cases where property is held in common, which cannot be divided without great prejudice to the proprietors, the statute is peculiarly applicable and beneficial. *Bonner* v. *Proprietors of Kennebeck Purchase*, 7 Mass. 475. The question in the case of *Mitchell* v. *Starbuck* was, whether when tenants in common had organized themselves under the statute, as a corporation, the proprietors could afterwards be compelled to make partition ; a question which has no bearing on the point now under consideration. There can be no doubt, therefore, that the owners in common of the meeting-house lot had a right to organize themselves as a corporation, under the statute ; and so it was decided in the case of the said *Second Congregational Society* v. *Waring*, 24 Pick. 304.

It was then objected, that the proprietors did not organize themselves in pursuance of the requisitions of the statute ; because 't does not appear by the records of their proceedings

that the five applicants to the magistrate, to call the meeting of the proprietors, were all proprietors, and because it does not appear that a majority in interest of all the proprietors voted in favor of the organization, as the statute requires. But we think these objections are not now open on this bill of exceptions. The objections should have been specifically made at the trial, when the defects in the record might have been supplied by other evidence.

The remaining question to be considered is, whether the plaintiff had any legal right to enter the meeting-house, and to. fix labels to the twenty one pews, as stated in the exceptions. The plaintiff entered for this purpose, claiming a right so to do, as the agent of the said Congregational Society, who, it is contended, were the lawful owners of the said pews. But we are of opinion that the evidence in the case clearly proves that the legal title to the meeting-house and land was in the proprietors, and that the said society had never acquired any legal title thereto. It is true that the house was built for the use of the society, and the evidence proves, or has a tendency to prove, that the society will be entitled to the surplus of any moneys which have been or may be received for the sales of the pews in said meeting-house, after defraying the expenses of building the house, and other expenses. But this is no proof of the society's title to the twenty one pews, although, when sold, they may be entitled to the proceeds of the sale. The society proceeded under a misapprehension of their rights, which is the more remarkable, since their rights and those of the proprietors were fully considered and distinctly stated in the opinion of the court, in their action against Waring, before cited. It was in that case decided, that the legal estate in the land and meeting-house was in the proprietors, and not in the Congregational Society. It is true that the society prevailed in that suit; but judgment was rendered expressly on the ground that the legal estate was vested in the proprietors, and that the society was in possession by the permission of the proprietors; the latter holding it as trustees for the former.

It is clear, therefore, that whatever rights the religious so-

ciety have to the property, they are equitable, and are cognizable only by a court of equity. They accordingly did commence a suit in equity, which, however, they did not prosecute to final judgment; probably because they were advised that it could not be maintained, it having been commenced against the present defendant, and not against the proprietors. But however this may be, and whatever rights the society may have, we are very clearly of opinion that they have no legal title to the pews in question, and that the plaintiff had no right to enter the meeting-house for the purpose of labelling them as their property.

*Exceptions overruled.*